Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CONSEJO DE TITULARES DEL CONDOMINIO TERRAZAS DE PARQUE ESCORIAL<br><br>Parte Apelado<br><br>Vs.<br><br>MAPFRE PARAICO INSURANCE COMPANY<br><br>Parte Apelante | KLAN202500209 | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso núm.: CA2019CV03423<br><br>Sobre:<br>SEGUROS; INCLUMPLIMIENTO ASEGURADORAS HURACAN MARÍA, IRMA |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2026.

El 12 de marzo de 2025, MAPFRE PRAICO Insurance Company (MAPFRE o parte apelante) presentó ante nos un recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia Parcial* emitida el 7 de febrero de 2025, notificada el 11 de febrero de 2025, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI o foro primario).[2]

En el aludido dictamen, el TPI ordenó a MAPFRE pagar la suma de $6,572,351.66 por concepto de daños y perjuicios, a raíz del impacto que tuvo el fenómeno atmosférico, huracán María en el Condominio Terrazas de Parque Escorial.

Por los fundamentos que expondremos a continuación, modificamos la *Sentencia* apelada y así modificada, la confirmamos.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Sánchez Báez.

[2] Entrada Núm. 236 del caso CA2019CV03423 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

# I.

El caso de epígrafe tiene su inicio cuando el 5 de septiembre de 2019, el Consejo de Titulares del Condominio Terrazas del Parque Escorial (el Consejo o parte apelada) instó una *Demanda* en la que solicitó que MAPFRE le compensara por los daños que sufrió el Condominio Terrazas de Parque Escorial como consecuencia del paso del huracán María por Puerto Rico el 20 de septiembre de 2017.[3] En particular, el Consejo arguyó que presentó una reclamación ante MAPFRE[4], y esta última incumplió con los términos y condiciones de la póliza de seguro.[5]

Por otro lado, el Consejo manifestó que, luego de haber presentado su reclamación, MAPFRE le informó una cifra ajustada que no era razonable ante los evidentes daños en la propiedad.[6] Por tal razón, el Consejo adujo que se vio forzado a contratar sus propios peritos para identificar los daños que sufrió el condominio. Asimismo, alegó que, MAPFRE se negó a pagar por los daños cubiertos y, como resultado, la propiedad no ha sido reparada. Por estas razones solicitó que MAPFRE pague por la totalidad de los daños causados en la propiedad por el huracán María de conformidad el Art. 1077 y el Art. 1054 del derogado *Código Civil de*

---

[3] Entrada Núm. 1 del caso CA2019CV03423 en el SUMAC. El 22 de noviembre de 2019, se presentó *Demanda Enmendada* en la que el Consejo alegó que sufrió daños valorados en $33,615,534.58. Véase, Entrada Núm. 6.

[4] El 25 de septiembre de 2017, el Consejo notificó a MAPFRE un Aviso de Pérdida en torno a los daños que sufrió el portón principal de la propiedad durante el huracán María. A esta reclamación se le asignó el número 20171272751.

[5] El Consejo había contratado la Póliza Núm. 1600178003443 expedida por MAPFRE vigente desde el 15 de junio de 2017 hasta el 15 de junio de 2018. Según las declaraciones de dicha póliza, la cubierta tenía un límite agregado de $28,638,555.00. Además, en la póliza se indicaba un deducible de 2% del límite asegurado para "tormentas de viento" ("windstorm").

[6] Surge de las estipulaciones de hechos de ambas partes que, mediante carta de 31 de mayo de 2018, MAPFRE le informó al Consejo que había culminado la investigación y ajuste de su reclamación y había concluido que procedía un pago por $2,180.00. Tras varios Avisos de Pérdida de titulares que habían reportado daños a sus unidades de apartamento, el 10 de mayo de 2019, MAPFRE notificó al Consejo un ajuste en la reclamación ofreciendo la cantidad de $127,572.15. En tal comunicación, valoró la totalidad de los daños en $868,472.70. De modo que, MAPFRE emitió dos (2) cheques a favor del Consejo: (1) con fecha de 6 de junio de 2019, por la cantidad de $82,727.42; y, (2) con fecha de 18 de junio de 2019, por la cantidad de $50,000.00. No obstante, el Consejo rechazó estas ofertas. Apéndice de la *Apelación*, pág. 391.

*Puerto Rico de 1930,* 31 LPRA secs. 3052 y 3018[7]. En esa línea, solicitó ser indemnizado por un monto en concepto de daños y perjuicios como resultado de la violación a las disposiciones del *Código de Seguros de Puerto Rico* (Ley Núm. 247-2018), según enmendado, 26 LPRA sec. 101, *et seq.* [8]. Por último, solicitó ser indemnizado con respecto a las costas y honorarios de abogados por temeridad bajo las Reglas 44.1(d) y 44.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d) y 44.3(b), y los gastos incurridos en buscar una justa compensación de conformidad con la póliza en virtud del artículo 27.165 del Código de Seguros, *supra.*

El 22 de enero de 2022, MAPFRE presentó su *Contestación a Demanda Enmendada.*[9] En síntesis, negó las alegaciones en su contra, y arguyó que, investigó adecuadamente la reclamación en cumplimiento con la póliza, las leyes y los reglamentos aplicables. En cuanto a los daños alegados en la *Demanda*, adujo que la misma es excesiva, especulativa y exagerada. Afirmó que, el Consejo habría incurrido en la práctica de sobreestimación de daños, costos y alcance.

Por otro lado, el 22 de julio de 2022, las partes sometieron un *Informe de Conferencia con Antelación a Juicio.*[10] Luego de varios incidentes procesales, y en lo pertinente al presente recurso, el TPI designó al Lcdo. Rodríguez Vidal como *Comisionado Especial* (Comisionado), el cual fue elegido por ambas partes, con el fin de

---

[7] En nuestro ordenamiento, aunque la normativa vigente es el *Código Civil de Puerto Rico de 2020* (Ley Núm. 55-2020), 31 LPRA secs. 5311, *et seq.*, la versión derogada era la que se encontraba vigente al momento de surgir la controversia de autos.

[8] En particular, al amparo del Art. 27.020, Arts. 27.161-27.162, y Art. 27.164(1)(b)(i)-(ii) y (iii) del Código de Seguros, *supra.*

[9] Entrada Núm. 15 del caso CA2019CV03423 en el SUMAC.

[10] Entrada Núm. 162 del caso CA2019CV03423 en el SUMAC, pág. 32. Allí, el Consejo consignó las siguientes controversias: si MAPFRE incumplió sus obligaciones bajo la póliza al no investigar razonable y adecuadamente la reclamación; si la aseguradora ofreció una suma muy por debajo de lo que el Consejo tenía derecho a recibir por indemnización de daños; si MAPFRE incumplió con sus obligaciones al no ajustar y pagar dentro de un plazo razonable; si el ajuste realizado fue insuficiente, incompleto e irrazonable; si MAPFRE debe indemnizar por el incumplimiento doloso; si el alcance y el estimado de los daños que sufrió el condominio están cubiertos por la póliza; si la aseguradora incurrió en temeridad, negligencia o dolo en el cumplimiento de sus obligaciones y/o en el trámite de la reclamación.

que investigara y determinara el valor de los daños ocasionados al condominio por el huracán María, para que así rindiese un informe.[11] Así pues, mediante *Orden sobre Designación de Comisionado Especial*, emitida el 10 de julio de 2023, notificada el 11 de julio de 2023, se encomendó al Comisionado emitir un informe de la valorización y el ajuste de los daños sufridos.[12]

Conforme a lo dispuesto por el foro primario, los días 12 de diciembre de 2023, y 12 y 19 de enero de 2024, se celebró la vista evidenciaria ante el Comisionado en la que tanto los peritos del Consejo como los de MAPFRE, tuvieron la ocasión de rendir sus testimonios.[13] En esa línea, el 1 de marzo de 2024, el Comisionado notificó a las partes un *Proyecto de Informe Final* para su consideración, objeciones y sugerencias conforme a la Regla 41.5(b) de Procedimiento Civil, *supra*, R. 41.5(b).[14] Tras las objeciones y sugerencias presentadas por las partes, el Comisionado presentó al Tribunal y a las partes el *Informe Final del Comisionado Especial*.[15]

Surge del *Informe Final*, que el Comisionado tuvo ante sí y evaluó, además de los testimonios, complejos informes periciales presentados por las partes. De esta forma, en cumplimiento con su encomienda, el Comisionado plasmó: (i) un resumen de las teorías de las partes; (ii) procedimientos con antelación a vista evidenciaria; (iii) resumen de la prueba admitida y considerada; (iv) exposición narrativa de los testimonios ofrecidos por los testigos de las partes;

---

[11] Véase, *Moción Conjunta Notificando Selección de Comisionado Especial*, Entrada Núm. 185 del caso CA2019CV03423 en el SUMAC.
[12] Entrada Núm. 187 del caso CA2019CV03423 en el SUMAC. El foro primario dispuso que, en el Informe que habría de emitir el Comisionado se debía incluir: (1) un desglose detallado del valor de los daños a la propiedad ocasionados por el huracán María; (2) determinaciones sobre el ajuste de los daños conforme a la prueba que presenten las partes en torno a los términos, límites asegurados, condiciones y exclusiones de la póliza expedida por MAPFRE; (3) un resumen de la prueba evaluada, considerada y excluida; y, (4) una relación de determinaciones de hechos.
[13] Por parte del Consejo, el Comisionado recibió los testimonios del Sr. Irmiter, el Ing. López Esquerra y el Sr. Rothafel. Por parte de MAPFRE, sirvieron de testigos el Sr. Acevedo y el Ing. Rosario. De esta manera, los testigos declararon so pena de perjurio y estuvieron sujetos a contrainterrogatorio.
[14] Entrada Núm. 219 del caso CA2019CV03423 en el SUMAC.
[15] Entrada Núm. 221 del caso CA2019CV03423 en el SUMAC. Véase, parte VIII, a la pág. 88.

(v) determinaciones de hechos estipulados y probados; (vi) el ajuste de la reclamación; (vii) resumen del derecho aplicable; (viii) resumen de los escritos de las partes con sugerencias u objeciones al proyecto del informe; y su (ix) conclusión y recomendaciones.

El 24 de mayo de 2024, el Consejo presentó una *Moción Solicitando se Emita Sentencia Adoptando el Informe del Comisionado y Ordenando el Pago Correspondiente.*[16] Por otra parte, el 13 de junio de 2024, MAPFRE presentó su respectiva *Oposición.*[17] Asimismo, la aseguradora presentó sus *Objeciones al Informe Final del Comisionado Especial* el 17 de junio de 2024.[18] Así pues, el 12 de julio de 2024, el Consejo presentó su *Oposición a las Objeciones al Informe Final del Comisionado Especial.*[19]

Ante ese cuadro, el 7 de febrero de 2025, el TPI emitió una *Sentencia Parcial,* notificada el 11 de febrero de 2025, mediante la cual acogió el informe del Comisionado Especial en su mayoría y ordenó a MAPFRE pagar al Consejo la suma de $9,292,413.50.[20]

Inconforme, el 12 de marzo de 2025, MAPFRE radicó una *Apelación* en la que coligó los siguientes señalamientos de error:[21]

> Primer error: Erró el TPI al adoptar el informe emitido por el Comisionado Especial a pesar de contener determinaciones de hechos claramente erróneas e incluso no apoyadas en la prueba presentada y en contravención con los términos y condiciones de la póliza.
>
>> a. Erró el TPI al acoger la determinación del Comisionado Especial de que procede el reemplazo del 50.7% de las puertas corredizas y ventanas del condominio, a pesar de que el Consejo, contrario a MAPFRE, no presentó prueba ante el Comisionado Especial sobre cuáles puertas corredizas y ventanas estaban dañadas como consecuencia de los vientos del huracán María, y este último tampoco determinó cuáles lo estaban.
>> b. Erró el TPI al acoger la determinación del Comisionado Especial de que todos los techos del condominio requieren ser reparados, a pesar de

---

[16] Entrada Núm. 223 del caso CA2019CV03423 en el SUMAC.
[17] Entrada Núm. 227 del caso CA2019CV03423 en el SUMAC.
[18] Entrada Núm. 228 del caso CA2019CV03423 en el SUMAC.
[19] Entrada Núm. 231 del caso CA2019CV03423 en el SUMAC.
[20] Entrada Núm. 236 del caso CA2019CV03423 en el SUMAC.
[21] En ese mismo día, MAPFRE radicó ante nos, *Moción para que se eleve la prueba documental admitida durante la vista en su fondo* y *Solicitud de autorización para presentación de transcripción de la prueba oral.*

que los peritos del Consejo no inspeccionaron todos los techos y por lo tanto no se pasó prueba sobre la condición de todas dichas superficies.

c. Erró el TPI al acoger la determinación del Comisionado Especial de que procede aplicar a todas las partidas de reparación el impuesto sobre las ventas y uso ("IVU"), así como el impuesto de negocio a negocio ("B2B"), cuando el IVU aplica solo a materiales y equipos y el B2B, pago del cual el Consejo está exento, solo aplica a labor.

d. Erró el TPI al adoptar un estimado del Comisionado Especial que utiliza un listado de precios que no concuerda con el momento de la pérdida, en contravención con las disposiciones claras de la póliza.

Segundo error: Erró el TPI al acoger el informe del Comisionado Especial que excluyó indebidamente y no permitió contrainterrogar al Ing. Roberto López Esquerra, perito de la parte demandante, sobre inconsistencias en el testimonio brindado y estimados rendidos por este en otros casos.

Tercer error: Erró el TPI al acoger el informe del Comisionado Especial: (A) que no detalla los daños adjudicados por cada apartamento impidiendo a la demandada pormenorizar y señalar los errores en la adjudicación y valorización de cada uno de esos daños (incluyendo la adjudicación de daños a apartamentos no inspeccionados) en violación al debido proceso de ley; (B) sin concluir que la parte demandante incurrió en sobreestimación de sus daños, a pesar de que el Comisionado determinó que los daños eran menos del cincuenta por ciento (50%) del total estimado por sus peritos.

Cuarto error: Erró el TPI al ordenar a MAPFRE a pagar honorarios de abogado al Consejo, a tenor con el Art. 27.165 del Código de Seguros, cuando la parte demandante no cumplió con los requisitos reglamentarios ni jurisprudenciales para ser acreedora de ese remedio, ignorando así la jurisprudencia reciente.

Quinto error: Erró el TPI al ordenar a MAPFRE a pagar $2,305,636.43 (33%) en honorarios de abogado al Consejo, a tenor con la Regla 44.1 de Procedimiento Civil, cuando no se desfiló prueba alguna de temeridad, asunto que ni si quiera le fue encomendado por el Tribunal al Comisionado Especial, quien no hizo determinación a esos fines.

Sexto error: Erró el TPI al imponer intereses por mora ascendentes a $414,425.41 a partir del 7 de enero de 2018, fecha en que se alega en la parte dispositiva de la sentencia, se cumplían los 90 días de presentado el aviso de pérdida por el Consejo, sin determinación de hecho que lo sostenga a pesar de que las propias determinaciones de la sentencia parcial son muestra clara de la ausencia de una obligación líquida y exigible.

En cumplimiento con nuestra *Resolución*, el 11 de abril de 2025, el Consejo radicó un *Alegato en Oposición a Apelación Civil*. En síntesis, esbozó que la *Apelación* representa otro intento de

MAPFRE de eludir sus responsabilidades para con sus asegurados. De modo que, debía confirmarse la *Sentencia Parcial*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nuestra consideración.

**II.**

**A.**

Es harto conocido que, existe el derecho estatutario de acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell,* 199 DPR 311, 317 (2017). Como corolario de lo anterior, al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013). Así pues, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza el Foro Primario. *McConnell Jiménez v. Palau,* 161 DPR 734, 750 (2004). Como tribunal apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Dávila Nieves v. Meléndez Marín, supra,* pág. 770.

No obstante, la deferencia judicial no es absoluta. El Tribunal Supremo ha reiterado que, ésta cede si en las determinaciones del foro de instancia medió pasión, prejuicio, parcialidad o error manifiesto. *W.M.M. P.F.M., et al. v. Colegio et al., supra,* pág. 903; *Dávila Nieves v. Meléndez Marín, supra,* pág. 771; *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007). Es decir, la norma de deferencia encuentra su excepción cuando se demuestra que

hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023).

Se entiende que la *discreción* es tener el poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción. *García v. Asociación*, 165 DPR 311, 321 (2005). No obstante, el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad. *Íd.* En cuanto al abuso de discreción, el Tribunal Supremo ha señalado que se intervendrá, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211-212 (1990).

Por tanto, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, *supra*.

En cuanto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 782. Por tanto, la norma general es que, si la actuación del TPI no

está desprovista de una base razonable y no perjudica los derechos sustanciales de las partes, debe prevalecer su criterio. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

**B.**

Conforme a las Reglas de Procedimiento Civil, el Tribunal podrá nombrar un comisionado o comisionada especial con relación al pleito o procedimiento ante sí. La figura del comisionado o comisionada especial está regulada por la Regla 41 de Procedimiento Civil, *supra*, R. 41. En particular, esta regla describe a cabalidad su nombramiento; compensación; las encomiendas que le puede otorgar un tribunal cuando lo designa; los poderes que acompañan tal designación; el proceso a llevarse cuando el tribunal le encomiende un asunto, y el informe que éste debe realizar sobre todos los asuntos encomendados y que deberá entregar a la Secretaría del tribunal.

Ahora bien, la encomienda de un asunto a un comisionado en el Tribunal de Primera Instancia será la excepción y no la regla. El nombramiento de esta figura solamente se realizará cuando estén involucradas cuestiones sumamente técnicas, cuentas y cómputos difíciles de daños, o de conocimiento pericial altamente especializado. 32 LPRA Ap. V, R.41.3. No se nombrará un comisionado especial si una parte demuestra que el nombramiento ocasionaría una dilación innecesaria en los procedimientos o unos costos irrazonables. 32 LPRA Ap. V, R. 41.2.

En cuanto a los poderes del comisionado o la comisionada, la Regla 41.3 de Procedimiento Civil, *supra*, R. 41.3, dispone:

> La orden para encomendar un asunto a un comisionado o comisionada especificará con particularidad sus poderes y requerirá que informe sobre determinadas cuestiones litigiosas solamente, o que haga determinados actos, o que solamente reciba prueba y transmita el récord de la misma, y fijará un término razonable dentro del cual el comisionado o comisionada deberá presentar su informe. Sujeto a las especificaciones y limitaciones establecidas en la orden, el comisionado o comisionada tendrá y ejercitará el

poder de regular los procedimientos en toda vista celebrada ante él o ella, y de realizar cualquier acto y tomar cualquier medida que sea necesaria o adecuada para el cumplimiento eficiente de sus deberes bajo la orden. Podrá exigir que se produzca ante él o ella cualquier prueba sobre todos los asuntos comprendidos en la encomienda, incluso la producción de todos los libros, papeles, comprobantes, documentos y escritos pertinentes. Podrá decidir sobre la admisibilidad de prueba, a menos que se disponga otra cosa en la orden de encomienda, tendrá la facultad de juramentar personas testigos y examinarlas, de citar las partes en el pleito y de examinarlas bajo juramento. Cuando una parte así lo requiera, el comisionado o comisionada hará un récord de la prueba ofrecida y excluida del mismo modo y sujeto a las mismas limitaciones dispuestas en las Reglas de Evidencia.

Así pues, conforme a lo deberes asignados, el comisionado deberá preparar un informe sobre los asuntos que le fueron encomendados por el Tribunal. En caso de que se le exija que emita determinaciones de hechos y conclusiones de derecho, así lo hará presentando éste en la Secretaría del tribunal.[22] Antes de presentar su informe, el comisionado o la comisionada podrá someter un proyecto de éste a los abogados o abogadas de todas las partes con el fin de recibir sus sugerencias.[23]

En todos los casos, el tribunal aceptará las determinaciones del comisionado o comisionada, salvo que sean claramente erróneas. Veinte (20) días luego de la notificación del informe, o en el término que disponga el tribunal para tales efectos, cualquiera de las partes podrá notificar por escrito a las otras partes sus objeciones al informe. Cualquier solicitud al tribunal para que tome la acción que proceda con respecto al informe y a las objeciones a éste se hará mediante moción y con notificación, según se dispone en la Regla 67 de Procedimiento Civil. El tribunal, después de oír a las partes, podrá adoptar el informe, o modificarlo, o rechazarlo en todo o en parte, o recibir evidencia adicional, o devolverlo con instrucciones.[24]

---

[22] Regla 41.5 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 41.5 (A).
[23] Regla 41.5(b) de Procedimiento Civil, *supra.*
[24] Regla 41.5 (c) de Procedimiento Civil, *supra.*

**c.**

El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un evento incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. A cambio de una prima, se transfiere el riego de un evento especifico a la aseguradora, quien viene obligada a cubrir los daños económicos por los que el asegurado este llamado a responder. *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017). Así pues, la función primordial de una póliza de seguro es establecer un mecanismo para transferir un riesgo y de esta manera proteger al asegurado de ciertos eventos identificados en el contrato de seguros. *Íd.*

El Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, (Código de Seguros) es la ley que reglamenta las prácticas y los requisitos del negocio de seguros. *Jiménez López et al v. SIMED*, 180 DPR 1 (2010). Tal negocio, está revestido de un alto interés público, por lo que ha sido regulado ampliamente por el Estado. *Molina v. Plaza Acuática*, 166 DPR 260, 266 (2005). En cuanto a la interpretación de las pólizas, el Código de Seguros establece que todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 LPRA sec. 1125.

En lo pertinente al caso de autos, el seguro de propiedad comprende "toda clase de bienes raíces o muebles, e interés sobre los mismos, contra pérdida o daños por cualquier riesgo o causa, y contra pérdida como consecuencia de tales pérdidas o daños, que no sea una responsabilidad legal no contractual por tales pérdidas o danos". 26 LPRA sec. 404.

Cabe señalar, el Código de Seguros identifica prácticas desleales en el ajuste de reclamaciones presentadas por sus asegurados. Así, establece los términos que tienen las aseguradoras para completarlo. En el proceso del ajuste de la reclamación la aseguradora tiene que **intentar de buena fe llevar a cabo un ajuste rápido, justo y equitativo** de una reclamación de la cual surja claramente la responsabilidad. 26 LPRA sec. 2716a (énfasis nuestro). En particular el Artículo 27.162 del Código de Seguros dispone que:

(1) La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación.

(2) En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de esta sección, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.

(3) El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma. 26 LPRA sec. 2716b.

El término de 90 días para la resolución de la reclamación se cuenta a partir del momento que el que el asegurado presenta la reclamación. *Carpets & Rugs v. Tropical Reps.,* 175 DPR 615, 633 (2009); *Com. Seguros P.R. v. Gen. Accident Ins. Co.,* 132 DPR 543, 551 (1993). Con ello, se aspira a que las aseguradoras procedan con diligencia durante la tramitación de reclamaciones, de manera que se pueda proteger a los asegurados de la mala fe y dilación de los aseguradores. *Com. Seg. P.R. v. Antilles Ins. Co.,* 145 DPR 226, 232 (1998).

Por otro lado, el Art. 27.163 del Código de Seguros, *supra,* dispone que una reclamación puede ser resuelta de forma definitiva de las siguientes maneras: (1) emitiendo el pago total de la reclamación; (2) expresando la denegatoria escrita y fundamentada

de la reclamación, o (3) el cierre por inactividad del reclamante. 26 LPRA sec. 2716c. A su vez, se ha reconocido que la reclamación se puede resolver mediante la notificación de una oferta razonable. *Carpets & Rugs v. Tropical Reps.*, *supra*, pág. 634.

Cónsono con ello, el Art. 27.163(3) del Código de Seguros dispone que la aseguradora tiene el deber legal de adoptar e implementar métodos razonables para la rápida investigación de las reclamaciones que surjan bajo los términos de una póliza. 26 LPRA sec. 2716a. Por ello, **la aseguradora deberá realizar una investigación diligente** que incluya, entre otros: (1) determinar si el evento damnificador ocurrió durante la vigencia de la póliza; (2) determinar si el asegurado reclamante tenía un interés asegurable; (3) determinar si la propiedad damnificada es aquella descrita en las declaraciones; (4) confirmar si las pérdidas reclamadas no están sujetas a exclusiones de riesgo, e (5) investigar si el daño fue causado por negligencia de un tercero, de modo tal que el asegurador pueda subrogarse en los derechos de resarcimiento de su asegurado. *Carpets & Rugs v. Tropical Reps*, supra. Una vez analizados todos estos aspectos y aquellos que sean necesarios para brindar un ajuste equitativo, objetivo y razonable, es que la aseguradora se encuentra en posición de cumplir con su obligación de resolver una reclamación de formal final. *Íd.*

La Ley Núm. 247-2018, 26 LPRA secs. 2716d, 2716e y 3805, fue aprobada luego de que la Asamblea Legislativa examinara la respuesta de la industria de seguros tras el paso de los huracanes Irma y María. *Consejo de Titulares del Condominio Playa Azul II v. MAPFRE PRAICO Ins. Co.*, 2024 TSPR 140, 215 DPR __ (2024). En vista de ello, se enfatizó que el manejo de las reclamaciones por parte de esta industria se caracteriza por retrasos, mal manejos y reiteradas violaciones a las disposiciones de nuestro Código de

Seguros. Exposición de Motivos de la Ley Núm. 247-2018 (2018 [Parte 2] Leyes de Puerto Rico 2378-2379).

En vista de lo anterior, la Asamblea Legislativa formuló enmiendas al Código de Seguros para proveer protecciones y herramientas "adicionales en beneficio de los asegurados para garantizar el fiel cumplimiento de los fines del Código de Seguros y así agilizar el proceso de recuperación de Puerto Rico". *Consejo de Titulares del Condominio Playa Azul II v. MAPFRE PRAICO Ins. Co.*, *supra*; Consejo *de Titulares v. MAPFRE*, 208 DPR 761, 771-772 (2022). La intención legislativa detrás de tal enmienda fue garantizar a los asegurados una oportunidad real de vindicar el derecho a una indemnización justa, rápida y equitativa, entre otros derechos reconocidos por nuestro ordenamiento, cuya transgresión hasta ese momento se atendía mediante las disposiciones generales de las obligaciones y los contratos. *Íd.*.; Consejo *de Titulares v. MAPFRE*, *supra*, pág. 772.

Así pues, se consideró necesario que los asegurados tengan un mayor acceso a los tribunales para vindicar sus derechos. Exposición de Motivos de la Ley Núm. 247-2018 (2018 [Parte 2] Leyes de Puerto Rico 2381). Además, se reconoció que una de las principales barreras para la vindicación de sus derechos son los altos costos de llevar sus reclamos a los tribunales. *Íd.* Por esta razón, la Ley Núm. 247-2018, incorpora disposiciones ordenando el pago de honorarios por parte de las aseguradoras. En particular, se reconoce una causa de acción específica contra las aseguradoras por violaciones al Código, en donde se dispone que: "[e]n caso de adjudicación adversa en el juicio o luego de una apelación, el asegurador autorizado será responsable de los daños, junto con costos judiciales y honorarios razonables de abogados incurridos

por el demandante".[25] Además, el Art. 27.165 del Código de Seguros, 26 LPRA sec. 2716e, expresa:

> (1) Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado o el beneficiario designado bajo una póliza o contrato ejecutado por el asegurador, el Tribunal de Primera Instancia o, en el caso de una apelación en la que prevalezca el asegurado o beneficiario, el tribunal de apelación, deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación.
>          [...]
> (3) Cuando se otorgue, la compensación u honorarios del abogado se incluirán en la sentencia o decreto dictado en el caso.

Por otro lado, el Tribunal Supremo ha interpretado que, el requisito de notificación previa que instituye el inciso (3) del Art. 27.164 del Código de Seguros, *supra,* es de carácter jurisdiccional. *Consejo de Titulares del Condominio Playa Azul II v. MAPFRE PRAICO Ins. Co., supra*; *Cons. Tit. 76 Kings Court v. MAPFRE,* 208 DPR 1018 (2022). Por tanto, "[s]i la aseguradora opta por no atender el reclamo dentro de esos sesenta días [...] entonces podría enfrentar una demanda por daños y honorarios de abogado amparada en el Código de Seguros". *Cons. Tit. 76 Kings Court v. MAPFRE, supra,* pág. 1037.

Es preciso aclarar, el foro máximo ha interpretado que la causa de acción por daños y honorarios de abogado al amparo de los Arts. 27.167 y 27.165 del Código de Seguros, *supra*, está disponible únicamente si la aseguradora no remedia la situación dentro del plazo de sesenta (60) días. En ese sentido, una acción civil instada antes de que transcurra dicho término, "despoja al tribunal de autoridad para atender la reclamación, ya que nunca se configuró la causa de acción". *Íd.,* pág. 1041.

---

[25] Art. 27.164 del Código de Seguros, 26 LPRA sec. 2716d.

**D.**

El Artículo 1053 del derogado Código Civil de 1930[26] dispone que "incurrirán en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación". 31 LPRA ant. sec. 3017. Así pues, una persona está sujeta a indemnizar los daños y perjuicios causados cuando en el cumplimiento de una obligación incurre en dolo, negligencia o **morosidad**. Art. 1054, Código Civil de 1930, 31 LPRA ant. sec. 3018.

De conformidad con la precitada disposición, el Artículo 1061 del derogado Código Civil de 1930, *supra*, sec. 3025, establece la imposición de intereses por mora, a saber: "[s]i la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio colectivo, en el interés legal".

En lo que respecta a la mora en el cumplimento de una obligación, los comentaristas señalan que deben concurrir los siguientes requisitos: (1) una obligación de dar o hacer; (2) que el acreedor requiera el cumplimiento al deudor judicial o extrajudicialmente; (3) que la obligación sea **exigible y líquida, y esté vencida**; (4) que el retraso sea imputable al deudor, y (5) que el retraso en cumplir se haya producido por la culpa del deudor. *Véase*, L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 11ma ed., Madrid, Ed. Tecnos, 2023, Volumen II, Tomo 1, págs. 191-192. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 17ma ed., Madrid, Ed. Reus S.A., 2008, Tomo III, págs. 238-240.

Los intereses por mora son considerados como una indemnización independiente de daños y perjuicios, impuesta como

---

[26] En virtud de que los hechos acontecieron previo a la vigencia del actual Código Civil, conviene citar el derogado Código Civil de 1930, *supra*.

penalidad por la demora en el pago, lo que constituye un derecho personal del acreedor, que puede ser renunciado por este. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 146 (2022); *Rivera v. Crescioni*, 77 DPR 47, 55-56 (1954). Sin embargo, los tribunales de primera instancia pueden imponer intereses por mora como una indemnización en daños y perjuicios aun cuando la parte con derecho a ello no lo haya solicitado. *Fuentes v. Hull Dobbs Co.,* 88 DPR 562, 571 (1963).

Ahora bien, la Regla 44.3 de Procedimiento Civil, *supra*, R.44.3, regula lo concerniente a la fijación del interés legal tanto post sentencia como por temeridad. *Gutiérrez v. A.A.A.*, 167 DPR 130, 136 (2006). En particular, la aludida Regla establece lo siguiente:

> (a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, y que esté en vigor al momento de dictarse la sentencia, en toda sentencia de dinero, a computarse sobre la cuantía de la sentencia que ordena el pago desde la fecha en que se dictó y hasta que ésta sea satisfecha, incluso las costas y los honorarios de abogado. El tipo de interés se hará constar en la sentencia. La Junta fijará y revisará periódicamente la tasa de interés por sentencia, tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la presentación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.
>
> (b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en todo caso de cobro de dinero y desde la presentación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, dependencias o funcionarios o funcionarias en su carácter oficial. El tipo de interés se hará constar en la sentencia.

El interés post sentencia se refiere al tipo de interés que se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. Éste se computa sobre la cuantía de la sentencia,

incluyendo las costas y los honorarios de abogados, y se fija desde la fecha en que se dicte la sentencia hasta que ésta se satisface. *Zequeira v. C.R.U.V.*, 95 DPR 738, 741 (1968). Su imposición es mandatoria a toda parte perdidosa sin distinción alguna. *Municipio de Mayagüez v. Rivera*, 113 DPR 467, 470 (1982); *P.R. Ame. Ins. Co. v. Tribunal Superior*, 84 DPR 621, 622-623 (1962).

**F.**

La Regla 44.1 de Procedimiento Civil, *supra*, R. 44.1, establece que,

[…]

(d) Honorarios de abogado. En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o dependencias haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

Nuestro ordenamiento jurídico rige que la concesión de honorarios de abogados a la parte que prevaleció en un litigio depende si la parte perdidosa o su abogado actuó o no con temeridad, *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 736 (1990); *Puerto Rico Fast Ferries, LLC v. Autoridad de Alianzas Público-Privadas*, 213 DPR 103, 115 (2023). El tribunal tiene la discreción en determinar si en efecto un abogado o la parte perdidosa actuo con temeridad, frivolidad o la existencia de una ley especial. *Ortiz Valle v. Panadería Ricomini*, 210 DPR 831 (2022). Si el Tribunal determina que una parte incurrió en temeridad, el foro sentenciador está obligado a imponer el pago de los honorarios de abogado a la parte que prevaleció en el pleito. *Puerto Rico Fast Ferries, LLC v. Autoridad de Alianzas Público-Privadas, supra*, pág. 116; *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 779 (2016).

La antes citada regla, tiene como propósito "establecer una penalidad a un litigante perdidoso que, **por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos**, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010) (énfasis nuestro).

Ahora bien, el concepto de temeridad es uno amplio que ha sido descrito como un comportamiento que incide en los procesos judiciales y afecta, tanto el buen funcionamiento de los tribunales como la administración de la justicia. *Íd.,* citando a *Meléndez Vega v. El Vocero de PR*, 189 DPR 123 (2013). En ese sentido, existe temeridad si el demandado contesta una demanda y niega su responsabilidad total, aunque la acepte posteriormente; si se defiende injustificadamente de la acción; si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida; si se arriesga a litigar un caso del que se desprendía prima facie la negligencia. Negar un hecho que le consta es cierto al que hace alegación, también constituye temeridad. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005), citando a *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987).

La determinación de si se ha incurrido o no en temeridad es una tarea que recae en la sana discreción del tribunal sentenciador y solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad. S.L.G. Flores–Jiménez v. Colberg, 173 DPR 843, 866 (2008).

**III.**

En el caso de autos, la parte apelante alegó que, el foro primario erró en acoger el Informe Especial redactado por el Comisionado, toda vez que, los hallazgos esbozados en el mencionado informe no son congruentes con los daños sufridos por el condominio. Asimismo, argumentó que, la cuantía impuesta por el TPI excede los daños sufridos por el condominio. Veamos.

Es sabido que, los tribunales revisores debemos brindar gran deferencia a las determinaciones de hechos que esboce el foro primario. Dicha deferencia se debe a que, el TPI fue el Tribunal que estuvo en mejor posición al momento de aquilatar la prueba presentada ante su consideración. Esta deferencia cede cuando medie pasión, prejuicio, parcialidad o error manifiesto por parte del juzgador, y entonces estamos autorizados a descartar las determinaciones de hechos y aplicar nuestro criterio ante la prueba desfilada en el TPI y ante nos.

Conforme las normas jurídicas pormenorizadas, el TPI puede nombrar a un Comisionado cuando en una controversia versen cuestiones sumamente técnicas, cuentas, asuntos periciales y cómputos difíciles de daños, o de conocimiento pericial altamente especializado. El foro primario tiene potestad en acoger el informe que redacte un Comisionado, salvo que contenga errores.

Luego de un análisis detallado del expediente ante nos, resolvemos que, la determinación del TPI en su *Sentencia Parcial* fue producto de un análisis ponderado de los escritos y argumentos presentados por las partes, y de la prueba documental y testifical ante sí. Atisbamos que, el Comisionado Especial designado en el caso de epígrafe rindió un informe en el que describió y desglosó detalladamente los daños que sufrió el condominio. Con ello, tras evaluar detenidamente el Informe del Comisionado, determinamos que los hallazgos son resultado de un análisis justo e imparcial.

Surge del expediente que, tanto el Comisionado como el TPI le garantizó el debido proceso de ley a las partes, brindándole la oportunidad de impugnar la prueba presentada. Mas aún, las partes, por medio de sus peritos, tuvieron la oportunidad de testificar y contrainterrogar los informes periciales, de presentar sus argumentos y prueba a su favor. Ciertamente, el TPI le dio gran credibilidad al Informe del Comisionado, acogiéndolo en su mayoría, lo cual merece nuestra deferencia y, en consecuencia, debe prevalecer su criterio.

En vista de lo anterior, en cuanto a los errores primero, segundo y tercero, resolvemos que no incidió el TPI al darle entera credibilidad al Informe del Comisionado y sustentar su decisión en este, toda vez que las partes tuvieron oportunidad de impugnarlo durante el proceso judicial. Asimismo, el Comisionado determinó que ninguna de las dos partes tenía completamente la razón en todos sus planteamientos por lo que su análisis fue basado en la prueba que tuvo ante su consideración. Por tanto, no hallamos indicios de pasión, prejuicio, parcialidad, error manifiesto u otras circunstancias extraordinarias, que nos permitan descartar la conclusión del foro primario. La *Sentencia Parcial* apelada no está desprovista de méritos, ya que el foro primario fundamentó su decisión conforme al Informe del Comisionado.

Por otro lado, por estar íntimamente relacionados, discutiremos el cuarto y quinto error en conjunto.

Tal como discutimos en nuestra segunda parte, el Art 27.165 del Código de Seguros, *supra,* del Código de Seguros, *supra,* limita la solicitud de honorarios de abogado. Ello, pues el citado artículo establece que procede la indemnización de honorarios de abogados si la aseguradora no remedia la situación, luego de haber sido notificada, dentro del plazo de sesenta (60) días. Dicha notificación debe realizarse previo entablar una acción civil con el propósito de

darle tiempo a la aseguradora de remediar la situación notificada. A su vez, la Regla 44.1 de Procedimiento Civil, *supra*, faculta al Tribunal en imponer honorarios de abogados dado que la citada regla les confirió discreción a los foros judiciales en determinar si procede imponer honorarios de abogados de una parte actuar de forma temeraria.

Aun tomando como cierto el hecho de que el Consejo entabló la *Demanda* sin que transcurriese el antes mencionado término de sesenta (60) días, el Tribunal está en su facultad de otorgar honorarios de abogado al amparo de la Regla 44.1 de Procedimiento Civil, *supra*. La aseguradora tuvo oportunidad de remediar los asuntos objeto de la *Demanda*, más aún, cuando desde octubre de 2017 se le había presentado un aviso de pérdida. Sin embargo, conforme la determinación del foro primario, la aseguradora no realizó una investigación adecuada, de modo que resultase en un ajuste rápido, justo y equitativo. El Comisionado Especial concluyó que el Consejo probó que el huracán María causó $6,572,351.66 en daños al Condominio. Sin duda, dicha cuantía representa una diferencia significativa respecto a la cuantía ofrecida por MAPFRE en sus estimados antes de que el Consejo se viera en la necesidad de entablar la *Demanda*. Basta con comparar los ajustes de daños extrajudiciales, en comparación con la cuantía de $1,597,932.41 estimada por los peritos de la aseguradora en el pleito.

Habida cuenta de ello, la discreción está atada a la razonabilidad en la decisión del juzgador de los hechos. Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. Entendemos que no se cumple con el estándar para intervenir en la apreciación que tuvo el foro de instancia al determinar que MAPFRE ha incurrido en conducta que promovió el pleito y que lo prolongó innecesariamente, incurriendo así en conducta temeraria.

Por último, respecto al sexto error, la parte apelante cuestiona la cuantía impuesta de intereses por mora por el *foro a quo*. En esa línea, la imposición de intereses por mora desde el día 7 de enero de 2018, merece nuestra atención.

Este foro intermedio ha interpretado que, una vez la seguradora resuelve la reclamación y emite un ajuste dentro de los noventa (90) días que exige el Artículo 27.162 del Código de Seguros, *supra,* el ajuste se convierte en una **cantidad líquida** que la aseguradora tiene la obligación de ofrecer y pagarle al asegurado, sin condicionarla a la renuncia de los reclamos legítimos que permanezcan.[27] En cuanto a la mora, cuando las aseguradoras realizan un ajuste de daños a propiedades aseguradas, tales sumas constituyen **deudas líquidas y exigibles** que deben ser pagadas sin dilación en beneficio del asegurado.

En el caso de autos, el foro primario concedió tal partida, al calcular noventa (90) días luego de la presentación de la reclamación del Consejo el 9 de octubre de 2017. No obstante, surge del trasfondo procesal y fáctico que presentaron las partes en sus mociones, que el 16 de mayo de 2018, **el Condominio había enviado un borrador de ajuste por la cantidad de $258,200.68**.[28] A esos fines, el 22 de junio de 2018, MAPFRE había notificado su desglose de daños y ajuste por la cantidad de $236,326.07. Así, la aseguradora emitió los respectivos cheques, más el Condominio no los depositó. Empero, no es hasta enero de 2019, seis (6) meses después, que el Condominio notifica un nuevo estimado de daños ascendente a $4,213,311.15.

---

[27] Villas de Humacao Ltd v. MAPFRE Praico Insurance Company, KLAN202500480, 2025 WL 2886526.
[28] Entrada Núm. 97 del caso CA2019CV03423 en el SUMAC. Véase, Apéndice de la *Apelación*, pág. 279.

No obstante, la reclamación del Condominio en octubre 2017 no fue acompañada de estimados de daños representativos a los alegados en la *Demanda*. Aunque los ajustes propuestos por MAPFRE, antes de la presentación del pleito, para las fechas de junio 2018 ($236,326.07) y mayo 2019 ($127,572.15) constituyen un reconocimiento de deuda, líquida y exigible, no podemos ignorar que, el Consejo se benefició del tiempo transcurrido al ajustar su estimado de daños.

El foro primario fundamentó su imposición de intereses por mora en un intento de atender la alegación de los aumentos en costos por inflación. Ello, en aras de restituir al Condominio los perjuicios económicos que le produjo el paso del tiempo. Tal como previamente esbozamos, el Consejo habría enviado un borrador de ajuste de daños y al mes siguiente, MAPFRE le había remitido unos cheques, por una cuantía similar a la solicitada.[29]

Como vemos, es en el año 2019 que el Consejo presenta, por primera vez, un ajuste de daños acorde a los propuestos en el pleito. Por tanto, con tal de realizar un balance justo, conforme al trasfondo fáctico y procesal, procede computar los intereses por mora a partir de la fecha en que el Consejo interpuso su *Demanda* hasta la fecha en la que el foro primario determinó la cuantía en concepto de daños sufridos por el Condominio producto del huracán María.

Por los fundamentos que anteriormente expuestos, los cuales se hacen formar parte de esta *Sentencia*, modificamos la *Sentencia Parcial* apelada a los fines de aclarar que los intereses por mora deben calcularse desde la fecha en que se presentó la *Demanda* hasta la fecha en que se emitió la *Sentencia Parcial* apelada. Así modificada, confirmamos.

---

[29] Entrada Núm. 97 del caso CA2019CV03423 en el SUMAC. Véase, Apéndice de la *Apelación*, pág. 279. El ajuste realizado por MAPFRE reflejaba una diferencia de aproximadamente $22,000.00. Además, la aseguradora ya había pagado $29,700.00.

**IV.**

Por los fundamentos que anteceden, modificamos la *Sentencia* apelada y, así modificada, se confirma el dictamen apelado.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones